The STATE OF NEW JERSEY,
Appellant,

v.

Peter MOCCO, Appellee.

Civil No. 96–3977(CSF).

United States District Court,
D. New Jersey.

March 31, 1997.

Peter Verniero, Attorney General of New Jersey by Dante Di Pirro, Trenton, NJ, for Appellant.

Hellring, Lindeman, Goldstein & Siegal by David Wolff, Newark, NJ, for Appellee.

CLARKSON S. FISHER, District Judge.

This matter comes before the court on appeal by the State of New Jersey from the July 17, 1996, order of the Honorable William H. Gindin. That order denied appellant's motion for the entry of an order to modify the stay. For the reasons set forth below, the order will be affirmed.

*Procedural History and Statement of Facts*

On August 2, 1993, the State of New Jersey ("the State") filed suit in the Superior Court of New Jersey alleging that Peter Mocco and two other individuals defrauded the State with regard to the leasing of a day care center located at 8–10 Clifton Place, Jersey City, New Jersey. Specifically, the State alleged that during the course of the negotiations of said lease, defendants knowingly misrepresented material facts in order to fraudulently induce the State into paying an excessive level of rent.

On or about March 30, 1994, Mocco filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On or about July 8, 1994, the case was administratively consolidated with the bankruptcy matters of Lorraine Mocco, Village Townhouse Estates, Inc., Knob Hill Victorian Estates, Inc., and Liberty Harbor North, Inc. The State did not file a proof of claim concerning the potential fraud judgment against Mocco, neither did it file a complaint of nondischargeability with regard to the same.

Meanwhile, in the New Jersey Superior Court, the State proceeded with its fraud suit. The case moved through discovery and the filing of cross-motions for summary judg-

ment. On April 12, 1996, the Superior Court denied the parties' cross-motions for summary judgment holding that there were issues of fact that the court considered only resolvable at trial. In thereupon discussing the scheduling of the upcoming Superior Court trial of the matter, the court indicated that the bankruptcy automatic stay of claims against Peter Mocco presented concerns of judicial economy and issue preclusion. In particular, these concerns favored a lifting of the bankruptcy automatic stay so that the claims against all defendants could be tried together by the Superior Court. After noting the proper mechanism for such lifting would be by motion to the bankruptcy court, the court indicated that if the State desired to proceed against all defendants in open trial (against both defendant-debtor Mocco as well as the non-debtor defendants), the State should file a motion to lift the stay with the bankruptcy court.

The State filed such a motion on June 14, 1996, asking the bankruptcy court to agree that the State should not be deterred from pursuing its state court fraud action against Mocco, even though his bankruptcy proceeding was then ongoing. On July 15, 1996, oral argument was held, at the conclusion of which Judge Gindin denied the State's motion from the bench. The court issued a written order dated July 17, 1996.

On July 24, 1996, the State filed its Notice of Appeal to the United States District Court. On October 1, 1996, the bankruptcy court gave notice that an Order confirming the Debtors' Fourth Amended Chapter 11 Plan had been entered on September 26, 1996. This court notes that while the State raised three issues in its Notice of Appeal, it now pursues only its sovereign immunity argument.

*Standard on Review*

Pursuant to 28 U.S.C. § 158(a), a United States District Court has appellate jurisdiction over final orders of the bankruptcy court. On an appeal from the bankruptcy court, findings of fact shall not be set aside unless clearly erroneous, but issues of law are properly reviewed by the district court in a plenary fashion. Bankr.Rule 8013; *In re J.P. Fyfe, Inc.*, 891 F.2d 66 (3d Cir.1989); *In re Morrissey*, 717 F.2d 100 (3d Cir.1983). In the present case, appellant's argument is based on an issue of law and, therefore, will be reviewed in a plenary fashion.

*Discussion*

Rule 3003 of the Fed. R. Bankr.P., entitled "Filing Proof of Claim In ... Chapter 11 Reorganization Cases," states in pertinent part as follows:

> (c)(2) Who Must File. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this Rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

In the present case, the court fixed a deadline of September 19, 1994, as the last day for creditors to file a proof of claim. It is undisputed that the State did not file either a proof of claim or complaint of nondischargeability on the potential fraud claim. The case of *In re Kings Terrace Nursing Home & Health Related Facility*, 184 B.R. 200 (S.D.N.Y.1995), is directly on point. *Kings Terrace* concerned an appeal from an order of the bankruptcy court, which presented the question:

> whether the New York State Department of Social Services ["State"] may recoup alleged pre-petition Medicaid overpayments to a nursing home ... where the State, although on notice of the bankruptcy, failed to file a notice of claim.

*Id.* at 201. The district court held, in affirming the bankruptcy court's decision, that the State's right to recapture the alleged overpayments was a "claim" within the meaning of the Bankruptcy Code, and that, therefore, the state's right to recoupment was barred by the State's "knowing and intentional failure to file a proof of claim, and that the [State's] right, if any, was discharged by the confirmation order and the [Bankruptcy] Code." *Id.* at 201–02.

Appellant argues that the bankruptcy court lacked jurisdiction to discharge the State's potential state court fraud judgment

because the State has not consented to waive its sovereign immunity. The crux of appellant's argument is based on the United States Supreme Court's opinion in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and its progeny.

■] Appellant correctly alleges that "the Eleventh Amendment to the United States Constitution provides that, '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' This provision 'bars suits which seek either damages or injunctive relief *against* a State, an "arm of the State," its instrumentalities, or its agencies.' " *In Matter of Midland Mechanical Contractors, Inc.,* 200 B.R. 453, 457 (Bankr. N.D.Ga 1996) (other citations omitted) (emphasis added).

Plaintiff's analysis of *Seminole* is premised on the fact that the U.S. Supreme Court "alter[ed] dramatically the landscape of Eleventh Amendment jurisprudence as it relates to statutorily abrogative provisions, particularly Bankruptcy Code § 106." *In Matter of Midland Mechanical Contractors,* 200 B.R. at 457. Additionally, "under the *Seminole* rationale, Congress's power to abrogate immunity only may be exercised pursuant to § 5 of the Fourteenth Amendment, and provisions of abrogation that are based upon Article I of the constitution, such as the Bankruptcy Code § 106, consequently do nothing to diminish the protection that each of the states enjoys under the Eleventh Amendment." *In Matter of Midland Mechanical Contractors,* 200 B.R. at 457–58 (citing *Seminole,* —— U.S. at ——, 116 S.Ct. at 1125). Other courts that have addressed this issue have been equally clear about the impact of *Seminole* in the bankruptcy context holding that *Seminole* "forecloses any argument that § 106 of the Bankruptcy Code abrogates the states' sovereign immunity." *Light v. State Bar of California,* 1996 WL 341112 No. 94–16995 at *2, *aff'd* 87 F.3d 1320 (9th Cir. June 20, 1996).

■ This court does not dispute appellant's analysis of *Seminole* and its progeny.

However, this court finds that the *Seminole* rationale is misplaced as applied to the facts of the present case. The State argues in its brief that under *Seminole,* the Bankruptcy Court lacked jurisdiction over the State's potential fraud claim, as the State did not file either a proof of claim or complaint of nondischargeability on the potential fraud claim and, therefore, had not submitted itself to the jurisdiction of the Bankruptcy Court. However, the State cites no legal authority for its argument that it was not subject to Fed R. Bankr.P. 3003. In fact, based on *Seminole* the State would have retained its sovereign immunity if it had appropriately filed a proof of claim.

Throughout its decisions the U.S. Supreme Court has established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (other citations omitted). Additionally, "it is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the *defendant* is proscribed by the Eleventh Amendment." *Id.* (other citations omitted) (emphasis added). "The very object and purpose of the [Eleventh] Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Juan Ortiz Martinez and Ellyha Torres,* 196 B.R. 225, 228 (D.Puerto Rico 1996) (citing *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605) (other citations omitted). In the present case, the state is not a defendant and, as such, cannot invoke the protection of the Eleventh Amendment.

Mocco scheduled the State on his bankruptcy petition as an unsecured, non-priority claimant with a disputed claim. The State, as a scheduled creditor, was on notice of Mocco's case and of all subsequent proceedings and deadlines, including the bar date. As a result of the appellant's failure to act, it is now without remedy in this court.

694

*Conclusion*

Appellant has not presented this court with any persuasive reason why it should be excused from Rule 3003 of the Federal Rules of Bankruptcy Procedure. Therefore, as appellant failed to file a notice of claim or complaint of nondischargeability, this court will deny appellant's motion and affirm the July 17, 1996, order.